RICHARD ROE, casual ejector, and JAMES H. COWART, tenant in possession, plaintiffs in error, *vs.* JOHN DOE, on the demise of HENRY WILLIAMS and DREWRY WILLIAMS, defendants in error.

[1.] Plaintiff in Ejectment derives title from W., by deed of gift, which has been lost. Defendant, from same person, by devise. On the trial: *Held*, that the declarations of W., that he had given the land to plaintiff; that it was his, etc.; that the plaintiff, with the knowledge of W., took possession of the land, cultivated, rented it out, etc., not to be irrelevant.

[2.] That a judgment of the Court establishing copy deed, in lieu of lost original, in a proceeding against the heirs at law of the grantor, is not conclusive against third persons who claim title to the land as devisees of W., and who were not his heirs at law, nor a part of them, and who had no notice of the proceeding.

Ejectment in Twiggs Superior Court, tried before Judge LOCHRANE, March Term, 1864.

This was an action of ejectment by Doe, upon the several demises of Henry Williams and Drewry Williams, against Roe, casual ejector, and Cowart, tenant in possession, for the recovery of a fractional lot of land, lying on the Ocmulgee river, in the twenty-eighth district of originally Wilkinson, now Twiggs county, and described in the declaration as number 194, containing 196 acres, and known as the "Dawson or Lewis" fraction.

The case was first tried on the appeal, in 1858, and a verdict was rendered for the defendant. A new trial was ordered by the Supreme Court.—27 *Ga. R.* 187.

At March Term, 1864, the case was tried again, when the plaintiff amended the declaration by striking out 194 as the number of the fraction, and inserting 216; and to the declaration, as thus amended, the defendant pleaded the statute of limitations.

Both parties set up title under Drewry Williams; the plaintiff claiming to hold by a deed of gift made from Drewry to Henry Williams, in 1826; and the defendant, under a devise in the last will of Drewry Williams, to the children of Redding Rutland and the testator's daughter, Polly Rutland, which Will was executed in 1835, and admitted to probate in 1837. A deed was read in evidence from these devises to Cowart, the defendant, dated July 10th, 1854.

Much testimony, on both sides, was submitted to the jury, upon which no point was made; but to the admission of the evidence of two of the plaintiff's witnesses, Durden and William Williams, the defendant objected on the ground of irrelevancy. The objection was overruled by the Court, and this is the first error assigned.

Durden's evidence was in answer to interrogatories describing the land as follows: "A fractional lot of land, in Twiggs county, containing about one hundred and ninety acres of swamp land, and known as the Dawson or Lewis

fraction and number 194, on the Ocmulgee river, and in the three hundred and twenty-second district, Georgia Militia."

The witness answered in substance, thus: "I know a fractional lot of land in Twiggs county, lying in the river swamp, on the Ocmulgee, formerly belonging to Drewry Williams. Drewry Williams told me that if I wanted to buy it, I must go to his son Henry; that he had given it to him. I know it as the Williams fraction, but do not recollect the number or district—have heard James H. Cowart say that he was in possession of it—do not know how long he has been in possession, but think about three years. I proposed to buy the lower lot, or fraction, from Drewry Williams, and he told me that he had given the two fractions to his sons Henry and William. This conversation took place after Drewry moved to Florida, and while he was back on business. Cowart told me he bought said land from Rutland's heirs, and that it was willed to them by Drewry Williams. He acknowledged that the fraction he was in possession of, was the land Henry Williams claimed. I know nothing about the number or district."

The evidence of the witness William Williams, was also in answer to Interrogatories, and was substantially as follows: "In 1827, our father, Drewry Williams, made a division of his property among his children. He gave to my brother Henry certain negroes and two lots of land, one known as the Rutland land, and the other as the Lewis and Dawson fraction; the numbers I do not know, but the lands are in Twiggs county, and known as the lands formerly belonging to Drewry Williams. The Rutland lot is an upland lot. * * * * The other is a fraction on the Ocmulgee river. It formerly belonged to Daniel Lewis; was sold by Lewis to Dawson, and, as well as I recollet, was sold at Sheriff's sale, as the property of Dawson, and purchased by Drewry Williams. I was not present at the division, nor did I ever see any title passed from our father to

Henry; but father informed me that he gave these lands to Henry, and the latter, with father's knowledge, went into possession of them and cultivated them in 1828.      In 1829 I rented the land, as the property of Henry, to Reason D. Bealle, of Macon.   This was known to our father, and he claimed no right to the rent, nor pretended to exercise any ownership over the premises.   I know Henry was in possession of these lands in 1828, and I heard our father say he had given them to him."   The witness also described the boundaries of the lands, and annexed to his answers a diagram showing their situation.

The plaintiff introduced in evidence an established copy of a deed of gift from Drewry to Henry Williams, dated December 1st 1826, and conveying, as it was contended, the premises in dispute.   This copy was established by a judgment of the Superior Court of Twiggs county, rendered at April term 1848, upon a rule *nisi*, granted by the Court at the previous October term, calling upon "the heirs at law" of Drewry Williams to show cause why such copy should not be established in lieu of the original, alleged to be lost. Both this rule *nisi* and the judgment thereon, were introduced with the copy deed.   The judgment recited that the rule *nisi* had been served upon all the heirs; but among the indorsements of service upon the rule itself, there was, as to Mary Howell, one of the heirs, no entry except the following: "October 15th 1847, service of within rule is hereby acknowledged by Samuel and Mary Howell."   There was no evidence *aliunde* that Mary Howell had, in fact, been served, and it was proven that she could not write, but uniformly made her mark.

This Mary Howell was the person described in the will as Polly Rutland, the testator's daughter.

There was no evidence whatever of any service of the rule *nisi* upon the children of Redding and Polly Rutland, or of any notice to them of the proceeding.

The Court charged the jury that Mary Howell, the children of Redding and Polly Rutland, and Cowart, the defendant,

were all concluded by the judgment establishing the copy deed, and that in the present action, the copy was to be regarded by the jury as the deed of Drewry Williams.   This charge is the second error assigned in the bill of exceptions.

B. HILL, for plaintiff in error.

POE, for the defendant.

LYON, J.

Two questions are made by this record:

1st. The admission by the Court, as evidence, of the declarations of Drewry Williams, deceased, the former owner of the premises in dispute, and from whom both titles are derived, that he had given the land to Henry Williams, the plaintiff, that the land belonged to him, that there was a division by said Drewry Williams of his property among his children, in which this land, with other property, fell to the plaintiff; the statements of the witnesses, that Drewry Williams gave the land to his son Henry, that Henry with his father's knowledge, took possession of the land, cultivated it, and rented it out as his, etc., etc.

2d. The charge of the Court to the jury, that Mary Howell, and the children of Redding and Polly Rutland, and Cowart, the defendant, who claims his title through these persons, were all concluded by the judgment establishing the copy deed, and that in the present action, the copy was to be regarded by the jury as the deed of Drewry Williams.

[1.] We think the first objection, that to the evidence on the ground of its irrelevancy, was properly overruled.   Whether Drewry Williams did, in fact, give this land to his son Henry, was the real issue before the Court, and to that issue, this evidence was strictly relevant.   We do not mean to say, for we do not so believe, that the evidence by itself was sufficient to establish the fact, but it certainly shows an intention, at least, to give the land.   It is claimed that this intention was

perfected by a deed, but that this deed has been lost, and other evidence of the fact of the gift is necessary. Now, as the intention is here manifested, other very slight evidence might be sufficient to satisfy the jury that the gift was completed. We do not say that it will, nor do we say any thing for the purpose of affecting the issue. What we do say is, that these declarations, upon this issue, are admissible to the jury to be considered by them.

[2.] Then as to the other objection—that to the charge of the Court. This, we think, was well taken. The defendant derives his title to the land from the children of Redding and Polly Rutland, and they, under a devise from Drewry Williams directly to them.. The proceeding to establish the copy deed in lieu of the lost original, in Twiggs Superior Court, was against the heirs at law of Drewry Williams. The children of Redding and Polly Rutland, from whom defendant derived his title, were not the heirs at law of Drewry Williams, nor a part of them. Their mother, Mary Howell, or Polly Rutland, was one of them, and so was the plaintiff Henry Williams, the movant of that proceeding. These persons, the children of Polly Rutland, did not acquire title as heirs at law, but as devisees under the will of their grandfather. They were the persons interested, and to be affected by the proceeding. Yet they were no parties thereto, nor was any one else who was interested in defeating the judgment. These parties were not served with notice of the proceeding which was to defeat their title. They, on that question, have had no day in Court, and how then can it be said that they are concluded by it? To have given the Court jurisdiction as to these persons, it was necessary that they should have been made parties and served. As this was not done, they were not concluded. *Rogers vs. Evans*, 8 *Ga.*, 143 ; *Towns vs. Springer* 9 *Ga.*, 130 ; *Mobley vs. Mobley*, 9 *Ga.*, 247, *et passim.*

When this case was before this Court at first, it was the impression that the children of Polly Rutland were either before the Court or had such notice of the proceeding as

enabled them to defend, etc. But that was not true. The proceeding not only was not against them, but they had no notice of it. Their mother, Mary Howell, and one of the heirs at law, does not seem to have had any notice; but if she had, that could not have been a notice to the children, they being of age and capable of speaking and acting for themselves. . The decision then pronounced by Judge McDonald, must be understood as being made under that impression.—See *Williams vs. Cowart*, 27 *Ga.*, 187. The Judge of the Court below was evidently misled by that opinion.